*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re NJAR, Minor.

UNPUBLISHED
June 29, 2023

No. 363929
Monroe Circuit Court
Family Division
LC No. 22-005427-AY

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this stepparent adoption case, respondent appeals as of right the trial court orders terminating his parental rights to his minor child, NJAR, and placing the child for stepparent adoption in the home of petitioners, the child's mother and stepfather. On appeal, respondent argues that the trial court clearly erred in finding MCL 710.51(6)(a) and (b) were satisfied by clear and convincing evidence. We affirm.

## I. BACKGROUND

Respondent and the mother dated and separated, and the mother was granted sole legal and physical custody of NJAR. Petitioners married in 2021, and on April 12, 2022, petitioned for stepparent adoption and to terminate respondent's parental rights. Respondent at this point had been incarcerated since 2017; he was released shortly after the petitions were filed. The petitions alleged that, over the prior two years or more, respondent failed to comply with a support order,[1] and he regularly and substantially failed or neglected to visit, contact, or communicate with NJAR. The trial court held a termination hearing over two days. Respondent, the mother, the stepfather, and respondent's two sisters all testified.

---

[1] During the second day of respondent's termination hearing, petitioners acknowledged that, because respondent's support award was set to $0 in 2017 when he was incarcerated, they had to prove under MCL 710.51(6)(a) that respondent failed or neglected to provide regular and substantial support for the child despite an ability to do so.

The court ultimately found by clear and convincing evidence that, over the two years preceding the petition, (1) respondent, under MCL 710.51(6)(a), had the ability to provide some measure of support for NJAR, but failed to do so, and (2) under MCL 710.51(6)(b), he failed to make reasonable efforts to communicate or correspond with the child. Accordingly, the court ordered that respondent's parental rights be terminated under MCL 710.51. The same day, the trial court entered an amended order terminating respondent's parental rights under MCL 710.51(6)(a) and (b), and ordered that NJAR be placed for stepparent adoption in the home of petitioners. This appeal followed.

## II. STANDARD OF REVIEW

A petitioner in a stepparent adoption proceeding must prove by clear and convincing evidence that termination of the noncustodial parent's rights is warranted. *In re ALZ*, 247 Mich App 264, 272; 636 NW2d 284 (2001). The trial court's factual findings are reviewed for clear error. *Id*. at 271. "A finding is clearly erroneous if, although there is evidence to support it, [the reviewing court is] left with a definite and firm conviction that a mistake was made." *Id*. at 271-272. We generally defer to the trial court's special opportunity to judge the credibility of the witnesses. MCR 2.613(C).

## III. ANALYSIS

Respondent argues that the trial court clearly erred in finding MCL 710.51(6)(a) and (b) were satisfied by clear and convincing evidence. We disagree.

MCL 710.51(6) controls when the termination of a noncustodial parent's rights is requested pending stepparent adoption. *In re ALZ*, 247 Mich App at 272. MCL 710.51(6) states:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.

> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [Footnote omitted.]

To prove that termination of the noncustodial parent's rights is warranted, a petitioner must show by clear and convincing evidence that both subsections (6)(a) and (6)(b) are met. *In re ALZ*, 247

Mich App at 272. "[I]n applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the termination petition." *In re Talh*, 302 Mich App 594, 597-598; 840 NW2d 398 (2013).

Here, the trial court found, in relevant part, as follows:

> Focusing on the most recent two years preceding the filing of the petition for step[]parent adoption, it is clear that Respondent[-]Father was incarcerated for the majority of those months. . . . However, he had resources available to him that could have been used, at least in part, to support his child. Rather than directing family members to make even a small child support payment on his behalf, or seeking an income withholding order when he was employed, Respondent kept all of his funds to himself. Rather than free up funds for shoes for his daughter, he purchased $79-[$]89 basketball shoes for himself about every six months. He bought himself a $270 television, but not a single birthday or Christmas gift for [NJAR], even though he would receive hundreds in funds for his own birthdays. It appears to the court that he lacked the motivation to do so, because the court had ceased efforts at enforcing his obligation to pay.

> Not only did Respondent fail to regularly and substantially support [NJAR], but he also failed to maintain a healthy parent-child relationship by visiting or communicating with her.

> * * *

> [D]uring the time that [respondent] was incarcerated, [he] did not make reasonable efforts to maintain a relationship with [NJAR]. He sent no letters, emails, cards, or gifts. He made an effort to deflect the blame onto [the mother] by calling her "a Karen," and he did not want to "ruffle her feathers." He acknowledged that he could have sent a letter to [the maternal grandmother], but he "felt like [he] shouldn't have to do that." As he admitted, it had been five years and four months since the last time he saw his daughter. He solicited the assistance of his sisters to place three-way calls that had not been prearranged or ordered by the court, made from numbers that were not in [the mother]'s contacts. These efforts were, not surprisingly, unsuccessful. The court acknowledges that these efforts were made, but it does not find that it was a reasonable way to effectuate contact between a domestic violence victim and her abuser. The fact that the efforts failed and yet persisted, with no other effort being made to address contact through a legitimate method, such as through the parties' domestic relations action, leads the court to conclude that minimal effort was made.

In clarifying its specific findings regarding MCL 710.51(6)(a) and (b), the court stated:

> The court finds by clear and convincing evidence, based on the facts outlined above, that Respondent did have the ability to provide some measure of support for his daughter during the two years preceding the filing of the petition, and he failed to do so. He had prison jobs, received substantial financial gifts, and

did not deny that deposits in his prison account totaled $4,400. Rather than make any effort to get money to [the mother] for his daughter's care, and instead of providing her with anything whatsoever of value, he purchased items for his own pleasure, like a television and new shoes. Despite his claims that his family would have provided anything [NJAR] needed, they did not, and he did not use his influence or resources to provide for her needs.

Respondent also had the ability to seek court-ordered parenting time, such as scheduled telephone calls, and the ability to file parenting time complaints. He never did so. Instead, he made fruitless efforts through his sisters to initiate unscheduled three-party calls from numbers [the mother] did not know on a random basis. The court does not find such efforts to have been reasonable, and his lack of initiative and his criminality have resulted in years of absence and a breakdown of the parent-child relationship. He testified that he purchased cards for her, but he allegedly is keeping them for her in a box. This gesture, even if true, did nothing to actually relay care and concern. To [NJAR], Respondent was absent and did not even bother to send her a letter, card, drawing, or anything else to show a father's love and devotion.

Concerning MCL 710.51(6)(a), respondent claims that the court erred by finding that he had an ability to provide support for NJAR during the relevant period (respondent does not contest that he never actually provided support for the child during his incarceration). In particular, respondent argues that the court failed to consider the limited nature of his income and gifts received while in prison, which in total only covered his monthly expenses. The court also failed to consider that respondent was not aware of any means to transfer funds out of his prison account. Instead, the court improperly emphasized respondent's isolated purchases of shoes and a television. But, according to respondent, he was never living exorbitantly while imprisoned, he only purchased the most basic of items for himself, and the evidence in totality contradicted the trial court's finding that he had the financial ability to provide financial support for NJAR. And even if respondent had the financial ability to provide support, he claims there was no evidence he had the logistical ability to do so from prison, with petitioners failing to present evidence of any means for him to send money out of his account while incarcerated.

As for MCL 710.51(6)(b), respondent argues that the court's finding was erroneous because, like in *ALZ*, the mother's efforts to prevent respondent's contact with NJAR precluded finding insufficient contact or communication. Specifically, the trial court failed to address the mother's insistence when respondent was first jailed in 2017 to no longer call her, her subsequent refusal to answer calls, her blocking of telephone numbers associated with respondent, and her refusal to provide respondent with an updated address after moving. Given these facts and this Court's ruling in *ALZ*, respondent claims that the trial court clearly erred in finding his efforts to communicate with NJAR unreasonable and faulting him for never seeking any parenting time or other contact with NJAR through the court.

As an initial matter, respondent fails to cite any analogous authority finding an inability to pay support under similar, or indeed any, circumstances. In any event, the trial court's finding under MCL 710.51(6)(a) was adequately supported by the record. Respondent received income and gifts throughout his imprisonment, totaling $4,411.95 in his account over the roughly 53

months of his imprisonment. Averaging this out, respondent had just over $83 per month to cover expenses that he testified were $80 monthly. While minimal, this surplus was income available to support NJAR. Only $1,070 (about 24% of the total) was deposited before the relevant period began in April 2020, with respondent receiving significantly increased funds in his account in the latter two years. Accordingly, respondent likely had an even greater surplus, and an associated ability to pay support, during the relevant period than this average calculation indicates.

But respondent still never made, or even attempted to make, any efforts to support his child while in prison. Respondent admitted receiving hundreds of dollars for his birthdays but spending money on shoes and the television, which he testified were things he just wanted, instead of supporting NJAR. Moreover, respondent explicitly claimed that his family would provide support for NJAR's needs, but they never did, and respondent admitted never asking them to. He also seems to have merely assumed that there was no way to send money or otherwise support NJAR through his prison account without ever making any inquiry or efforts to confirm this, and he never reached out to the Friend of the Court (FOC) for assistance with or clarification regarding support for his child. Under these circumstances, the court properly found that respondent had an ability to support or assist in supporting NJAR, but failed to do so. See *In re Caldwell*, 228 Mich App 116, 123; 576 NW2d 724 (1998) ("[T]he record reflects that [the incarcerated] respondent had the ability to assist in supporting his son. [The r]espondent initially earned $50 monthly in a prison apprenticeship program, and thereafter earned $150 monthly by the time of the termination hearing. Although [the] respondent testified that he could not send money outside the prison, he conceded that other prisoners with support obligations arranged for the prison to honor income-withholding orders. [The r]espondent did not pursue this avenue of payment even after obtaining a reduction in his support obligation.").

Moving to respondent's argument under MCL 710.51(b), we conclude that *In re ALZ*, 247 Mich App 264, is distinguishable from this case, and the trial court's finding under this subsection was adequately supported by the record. In *ALZ*, the respondent's rights were not terminated because the trial court properly found, contrary to MCL 710.51(6)(b), that he did not have the ability to contact the child, particularly because of the mother's resistance to any such contact. *Id*. at 273-277. However, the respondent in *ALZ* was not determined to be the child's legal father until just two months before the petitioners filed for termination, and he thus had no legal rights to contact the child for the vast majority of the relevant period under MCL 710.51(6)(b). See *id*. at 266-268, 273-274. The respondent actively sought to have contact with the child during the relevant period, initially requesting contact through the mother and then taking proper legal action through the courts when that was unsuccessful. *Id*. These facts render respondent's reliance on *ALZ* misplaced.

As the *ALZ* Court specifically stated:

In December 1998, well within th[e relevant] period, [the] respondent wrote [the] petitioner[-]mother and requested visitation with A.L.Z. In her written response, [the] petitioner[-]mother did not forbid [the] respondent from having contact with the child, but asked that he refrain from doing so. At this point, [the] respondent could have made an attempt, against [the] petitioner[-]mother's will, to contact or visit the child. However, [the] respondent's paternity of A.L.Z. had not been established at that time and, because he was effectively a nonparent, he had no legal

-5-

right to visitation or communication with the child. [The r]espondent's proper response to [the] petitioner[-]mother's resistance to his attempts to visit or contact the child was to file a complaint seeking an order of filiation, which he did on February 5, 1999, well within the two-year statutory period under MCL 710.51(6)(b). The family court determined that [the] respondent's December 1998 letter and February 1999 complaint constituted ongoing requests for contact with A.L.Z., but that [the] petitioner[-]mother's resistance to these requests resulted in [the] respondent's inability to contact the child, and we find no error in these determinations. [*Id*. at 273-274 (citations omitted).]

The *ALZ* Court specifically distinguished other cases cited by the petitioners therein, including *Caldwell*, because they involved (1) no efforts to prohibit contact by the custodial parent, or (2) respondents with the legal right to contact their children, or both. *Id*. at 274-275. In *Caldwell*, 228 Mich App at 121-122, this Court concluded that MCL 710.51(6)(b) was satisfied because, while the respondent allegedly lacked a phone number for the mother, he could have sent mail to his child and only did so three times during the relevant period.

Here, as the trial court correctly recognized, respondent made no efforts, apart from his ineffective reliance on third parties with no rights to contact NJAR, to contact or communicate with the child whatsoever during the relevant period. He made no calls and sent no letters, cards, pictures, or other communications to the mother or NJAR while imprisoned. We acknowledge disputed testimony concerning whether the mother withheld her address and told respondent to stop calling, as well as the mother's admission that she blocked respondent's number for some time while he was in prison, but defer to the trial court's apparent credibility determination that respondent's failure to communicate stemmed from his belief that such efforts might ruffle the mother's feathers, rather than any actual inability to contact NJAR. Indeed, respondent could have taken steps to contact NJAR and remedy the mother's alleged conduct, but he never did. Critically, despite having prior experience dealing with the FOC and making complaints concerning visitation with NJAR, respondent never reached out to the FOC or took any other appropriate action when imprisoned to have contact with the child or address the mother's alleged conduct.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

-6-